UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC P. RASMUSSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:08CV1468 TIA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. §1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

On April 10, 2007, Plaintiff protectively filed an application for Supplemental Security Income (SSI), alleging disability beginning August 16, 2006 due to a herniated disc in lower back and neck problems due to a car accident.  (Tr. 11, 51, 57, 62-4)  The application was denied, and Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (Tr. 50-55)   On November 19, 2007, Plaintiff testified at a hearing before an ALJ.  (Tr. 264-88)  In a decision dated February 19, 2008, the ALJ determined that Plaintiff had not been under a disability since April 10, 2007, the date he filed his application.  (Tr. 11-19)  On August 4, 2008, the Appeals Council denied Plaintiff's request for review. (Tr. 3-5)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

**II.  Evidence Before the ALJ**

Plaintiff testified at a hearing before an ALJ on November 19, 2007.  He was represented by

counsel. Plaintiff stated that he was 37 years old and weighed 191 pounds, which was 10 pounds over his normal weight. Plaintiff was 5 feet, 9 inches tall. He lived in a house with his 70-year-old mother and 41-year old brother. He received a settlement from a car accident for $12,000, along with food stamps and Medicaid. Plaintiff had a driver's license and drove himself to the hearing. He completed the 12th grade and graduated from high school. However, he had no additional education or training. Plaintiff last worked for Alio Construction as a construction worker building houses on September 10, 2002. He quit after suffering injuries from an automobile accident. Plaintiff testified that also performed carpet installation and newspaper delivery. (Tr. 270-73)

With regard to his alleged impairments, Plaintiff testified that his legs and arms were constantly on fire, and that he could not sleep. In addition, he had lower back pain from a herniated disc and neck protrusion. Plaintiff stated that his back burned and that he could not bend over. Further, he testified that he could not lift over 10 pounds. Neither physical therapy nor medication provided relief. Plaintiff also stated that he suffered from depression, for which he took Zoloft. (Tr. 273-75)

In addition, Plaintiff described burning pain in his neck, for which he could find no relief. The pain kept him awake at night. Further, he testified that he stayed in bed 10 to 12 hours during the day, although he rarely took a nap. Plaintiff stated that he also experienced a pins and needles sensation in his arms and legs, along with numbness. Moreover, he testified that he had difficulty focusing or concentration because he only thinks about his pain. Alternating between sitting, standing, and laying in bed seemed to help. Plaintiff believed that he could sit, stand or walk for 30 minutes before he needed to return to bed. (Tr. 275-79)

In addition, Plaintiff testified that he had low energy during the day. He could lift 10 pounds

at the most. Further, he had difficulty climbing stairs. Plaintiff was unable to squat or bend forward at the waist and had problems putting on his shoes and socks. Plaintiff's mother or brother did most of the cooking. Plaintiff could do laundry in little loads. His mother washed dishes and did other household chores. When grocery shopping, Plaintiff's mother pushed the grocery cart and put the items in the cart, and his mother or brother unloaded them. Plaintiff testified that he had no hobbies other than laying in bed. He socialized only with his family. (Tr. 280-85)

In a Disability Report – Adult form, Plaintiff indicated that he suffered from a "herniated disc in lower back and neck problems due to a car accident." He stated that he was unable to lift anything over 20 pounds because everything burned and hurt all the time. (Tr. 105) Further, in a Function Report – Adult form dated May 22, 2007, Plaintiff described his daily activities as waking up; laying in bed; getting up to eat; laying down and watching TV; going to the doctor 2 times a week; and trying to do little things. He reported that he did not do much because of the pain. He stated that he was unable to work and that pain affected his ability to sleep and dress. Further, Plaintiff reported that he did not cook as much due to pain, and he could not do house or yard work due a herniated disc in his lower back and a protrusion in his neck. (Tr. 96-103)

In a Disability Report – Appeal form dated July 11, 2007, Plaintiff stated that his condition remained unchanged since he last completed a disability report, and that he saw or would see a doctor for mental or emotional problems that affected his ability to work. (Tr. 73-77)

Plaintiff previously filed an application for a period of disability, disability insurance benefits, and supplemental security income on January 27, 2004. On August 16, 2006, an ALJ issued decision on that prior application found that Plaintiff suffered from severe impairments which included degenerative disc disease and a mood disorder. The ALJ discussed a consultative psychological

evaluation performed by Karen Hampton, Ph.D., on December 15, 2005, ordered by the Missouri Disability Determination Service for the Commissioner. Dr. Hampton's test results showed depressive symptoms with agitation and anxiety. Dr. Hampton diagnosed Plaintiff with a mood disorder, personality disorder, and a GAF of 57. (Tr. 22-33)

### III. Medical Evidence

On November 14, 2002, an MRI of Plaintiff's lumbar spine revealed a degenerative disc and facet changes at L4-L5 and minor diffuse protrusion at L4-L5. (Tr. 116) From August 4, 2004, through October 6, 2004, Plaintiff was treated at Sciortino Chiropractic Centre. Doctors David A. Sciortino and Ricky A. Roberts diagnosed conditions including cervical radiculitis, and thoracic and lumbar subluxation and sprain/strain. They advised Plaintiff to refrain from lifting, participating in sports and jarring activities, engaging in repetitive motion, and performing chores such as vacuuming and mopping. In addition, they prescribed home exercises. (Tr. 159-91)

On August 4, 2004, a Radiographic Biomechanical Report showed abnormal straightening of the cervical spine; cervical integrity change at C3; ligamentous laxity in the cervical spine; and Grade I spondylolisthesis at C5. (Tr. 185-91) On September 1, 2004, Plaintiff complained of severe, constant headaches, neck pain, back pain and stiffness, hip pain and stiffness, and shoulder pain and stiffness. He rated his pain as 10. Dr. Roberts noted pain with straight leg raises and with movement at all parts of the spine. (Tr. 169) In a report dated February 16, 2005, Dr. Sciortino noted that Plaintiff's work as a construction worker complicated matters and would be counterproductive, resulting in exacerbations and "flare-ups" of active symptoms. (Tr. 159)

On October 12, 2004, radiological tests of the thoracic spine revealed minimal degenerative changes at D11 and D12. However, x-rays of the cervical spine, lumbar spine, and sacrum and

4

coccyx were essentially normal. (Tr. 211-14) On November 24, 2004, Plaintiff complained of back pain. Dr. Chauhan at St. Louis ConnectCare noted that pain in low back shot through Plaintiff's whole body and that Plaintiff could not bend or straighten, or heel or toe walk. (Tr. 209-10)

On August 9, 2005, Anahid Kwiatkouski, M.D., at People's Health Center, noted complaints of pain all over Plaintiff's body, poor sleep, and a decrease in appetite and physical activity. Dr. Kwiatkouski noted that Plaintiff appeared frustrated. He diagnosed chronic neck and back pain, prescribed Elavil 50mg, Flexeril 10mg, and over-the-counter Ibuprofen. Dr. Kwiatkouskie further noted that Plaintiff declined pain medications. (Tr. 197-199) On August 25, 2005, imaging studies ordered by Dr. Kwiatkouski revealed disc space narrowing and degenerative changes at T11-T12. (Tr. 193)

On October 4, 2005, Plaintiff returned to St. Louis ConnectCare and reported pain all over his body at a level of 10. (Tr. 208) On October 21, 2005, an orthopedist at St. Louis ConnectCare reported severe pain head to toe, and that Plaintiff's condition remained unchanged since his injury three years prior. X-rays did not show anything. The doctor diagnosed neck pain with possible C5 spondylolisthesis, ordered an MRI, and prescribed anti-inflammatories. (Tr. 206)

On November 29, 2005, an MRI revealed a C6-C7 rightward broad based disc herniation with narrowing of the ipsilateral neuroforamen. a right paracentral herniation at C6-C7. (Tr. 201-02) On December 30, 2005, the doctor at St. Louis ConnectCare diagnosed a C6-C7 paracentral disc herniation and prescribed a soft collar. (Tr. 204-05)

From March 15, 2006, through April 19, 2006, Plaintiff underwent chiropractic treatment from Dr. Jeffrey Birkenmeier at the Birkenmeier Chiropractic Center. (Tr. 117-48) On March 15, 2006, Plaintiff reported chronic pain, stiffness, weakness and numbness in the head and neck region

5

as a result of a 2002 accident. Plaintiff described his symptoms as sharp and stabbing, and he reported chronic fatigue, difficulty moving joints, muscle weakness, numbness, pins and needles sensation, tingling, depression, sleep disturbance and ringing ears. He stated that his symptoms radiated to his shoulders, upper arms, elbows, forearms, wrists and hands, hips, legs, knees, ankles, and feet. Further, he had difficulty walking. Limitations to his daily activities included difficulty carrying groceries, changing positions from sit to stand, climbing stairs, driving, using a computer, bathing, dressing, shaving, and performing household chores. He further reported that he could not lift his children, and he experienced limited concentration and sleep. (Tr. 127-28)

Also on March 15, 2006, Dr. Birkenmeier diagnosed cervical myositis, cervical segmental dysfunction, cervical edema, trapezius myositis and edema, and painful cervical range of motion. The psychiatric exam was normal. Dr. Birkenmeier noted swelling and edema at C1 through C7. He further noted moderate to severe limitations in cervical motion, along with thoracic tenderness, swelling and segmental dysfunction. Dr. Birkenmeier found moderately limited lumbar ROM. In addition, he noted bilateral thigh pain with hip flexion and loss of hamstring flexibility. Dr. Birkenmeier prescribed treatment including manipulation and cold laser therapy. (Tr. 129-36)

On April 3, 2006, x-rays of Plaintiff's spine revealed cervical arthrosis and spondylosis, thoracic spondylosis, and lumbar lordotic flattening. (Tr. 145) On April 19, 2006, Dr. Birkenmeier noted that Plaintiff self-discharged due to transportation problems and did not meet any treatment goals. However, Plaintiff had been progressing satisfactorily. (Tr. 117)

On May 22, 2006, Plaintiff visited Dr. Lukasz Curylo at Mid County Orthopedics for a surgical spine consultation. Plaintiff complained of severe neck, mid-back, and low back pain with radiation in the arms and legs. Plaintiff described the pain as severe, tiring, exhausting, punishing and

6

cruel. He further stated that any activity other than laying down aggravated his pain. Plaintiff reported taking Naprosyn and methocarbamol for his pain. Dr. Curylo noted a past medical history of depression and hypertension. The examination revealed an antalgic gait bilaterally; severe tenderness over the entire cervical, thoracic, and lumbar spine; and 5/5 Waddell signs. Dr. Curylo noted that Plaintiff exhibited poor effort on motor testing of all the myotomes of the upper and lower extremities. He diagnosed neck, mid-back and low back pain syndrome, degenerative disc disease at C6-7, L4-5 and L5-S1, and "significant psycho-social magnification." He recommended psychological counseling and pain management. He did not have any surgical suggestions. (Tr. 149-51)

On March 5, 2007, Plaintiff visited Dr. H. Kenneth Gilbertson, reporting headache, neck pain, problems sleeping, back pain, nervousness, tension, irritability, head feeling heavy, pins and needles in arms, shortness of breath, fatigue, depression, loss of memory, ringing and buzzing in ears, loss of balance, and cold feet. Dr. Gilbertson ordered cervical and lumbar nerve conduction tests. (Tr. 230, 235) On March 7, 2007, Plaintiff underwent the nerve conduction testing prescribed by Dr. Gilbertson. The testing revealed hyperesthesia in the left C7 radial nerve medial branch. (Tr. 225-29)

On July 3, 2007, Plaintiff underwent a consultative examination by Dr. Elbert H. Cason. Dr. Cason noted that Plaintiff had not worked since September 10, 2002, due to neck pain, back pain, and pain all over his body. Plaintiff reported sharp to dull pain and burning pain in his neck, back, lower back and other joints. Plaintiff stated that he could walk about a block, stand or sit for about 30 minutes, and lift 20 pounds. Further, he reported that he was unable to bend over and that he could not afford a doctor or medications. Plaintiff further reported that he performed no household chores, but he was able to drive and leave the house about three times per week. (Tr. 152)

Dr. Cason noted marked decrease in range of motion in Plaintiff's back, greatly decreased straight leg raises, and exaggerated response to touch in his neck and lumbar spine area. He further noted that Plaintiff could not heel or toe stand or squat, and he walked with a right leg limp. Lumbar spine motion flexion and extension were limited, and Plaintiff again exaggerated his response to touch over the lumbar and cervical areas. Cervical spine motions were greatly decreased, along with shoulder motions. Dr. Cason assessed C6-C7 disc protrusion and disc degeneration with exaggerated response to touch and degenerative lumbar disc at L4-L5 with exaggerated response to touch. (Tr. 152-54)

On August 21, 2007, Plaintiff reported vision problems, eyes moving back and forth, and a history of headaches, ringing ears, dry eyes and blurred vision. Dr. Shear of Clarkson Eyecare referred Plaintiff for evaluation by Dr. Robert L. Lamberg, also at Clarkson Eyecare. (Tr. 246-47)

On August 23, 2007, Plaintiff returned to People's Health Center, complaining of pain for five years from head to toe and feeling very depressed. Dr. Ghosh diagnosed pain and severe depression. He prescribed Darvocet 100 mg q.i.d., Flexeril 10 mg b.i.d., Zoloft 50 mg q.i.d., and a psychiatric consultation. Dr. Ghosh doubted that Plaintiff's pain was that intense due to a lack of muscle spasm or deformity. (Tr. 194-96) On September 5, 2007, Dr. Ghosh substituted Celexa for Zoloft, and on September 27, 2007, he prescribed Celexa 20 mg. (Tr. 195)

On September 6, 2007, Plaintiff followed up at Clarkson Eyecare. Plaintiff reported blurred vision and constant eye sting since his motor vehicle collision five years prior. Dr. Lamberg prescribed Restasis and Systane. (Tr. 242) On October 4, 2007, Plaintiff again followed up with Clarkson Eyecare. Dr. Lamberg noted that Restasis appeared to help Plaintiff's eyes, renewed that prescription, and instructed him to return in six months. (Tr. 239)

8

On October 18, 2007, John E. Emmons, D.O., performed a consultative examination. Plaintiff reported herniated discs in the cervical spine; pain in the cervical spine and thoracic areas; pain radiating into both arms; intermittent numbness and tingling in his fingers; pain in both lower legs and feet; worsening dyspnea three times per week for five years; hypertension; depression present for two to three years; insomnia; cephalgia; and tinnitus. Upon examination, Dr. Emmons diagnosed chronic cervical pain; arthrosis at C6-7; spondylosis at C6-7; lower thoracic spondylosis; hypertension; major depressive disorder; generalized anxiety disorder; and insomnia. Dr. Emmons opined that Plaintiff could walk 30 minutes, stand 20 minutes, and sit 60 minutes, climb three flights of stairs, stoop occasionally, reach overhead frequently, perform fine motor tasks with his hands for 60 minutes, travel unaccompanied for 60 minutes or more, and see, hear and speak adequately to function in a controlled environment. (Tr. 252-59)

On November 8, 2007, Dr. Emmons completed a medical source statement indicating that Plaintiff could sit 4 hours; stand 2 hours; walk one hour; occasionally lift 1 to 25 pounds; occasionally carry 1 to 10 pounds; never carry 20 pounds or more; and reach overhead or stoop occasionally. He noted that Plaintiff's degenerative disc produced constant pain. Dr. Emmons recommended use of a cane, indicated that Plaintiff required breaks every 60 to 90 minutes due to pain and fatigue, and noted that the conditions existed since 2002 and would last over 12 months. (Tr. 249-51)

### IV. The ALJ's Determination

The ALJ issued an unfavorable decision on February 19, 2008, finding Plaintiff not disabled. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of April 10, 2007. At step two, the ALJ found that Plaintiff suffered from severe impairments including degenerative disc disease of the lumbar and

9

cervical spines. In making this determination, the ALJ stated that the Plaintiff had been diagnosed with depression in August 2007 and that the depression did not meet the 12-month duration requirement of 20 C.F.R. § 416.909. (Tr. 13)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. The ALJ assessed the medical evidence in the record, as well as Plaintiff's hearing testimony. However, the ALJ did not give any weight to Dr. Emmons' opinions because Dr. Emmons saw Plaintiff on only one occasion and did not state a lifting amount. He found that discrepancies in the record detracted from Plaintiff's credibility. (Tr. 13-18)

At step four, the ALJ concluded that Plaintiff was unable to return to his past relevant work as a construction worker or carpet installer. At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, and that based on an RFC for the full range of light work, and considering Plaintiff's age, education and work experience, Plaintiff was not disabled. The ALJ thus concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, since April 10, 2007, the date he filed his application. (Tr. 18-19)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robert v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs.,

11

957 F.2d 581, 585-86 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak , 49 F.3d at 1354.

## **Discussion**

Plaintiff argues that the ALJ erred in finding that Plaintiff did not have a mental impairment lasting at least 12 months. Further, the Plaintiff contends that substantial evidence does not support the ALJ's determination because the ALJ failed to include a narrative discussion of the RFC

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

assessment. Finally, the Plaintiff asserts that the ALJ erred in disregarding the opinions of the consultative physician, Dr. Emmons. Defendant, on the other hand, contends that the ALJ properly determined that Plaintiff did not have a severe mental impairment and properly assessed Plaintiff's RFC. Defendant further asserts that the ALJ properly applied the Medical-Vocational Guidelines ("grids") to find Plaintiff not disabled.

The undersigned finds that the ALJ erred in his RFC assessment and that the case should be remanded for further review. Residual Functional Capacity (RFC) is a medical question, and the ALJ's assessment must be supported by substantial evidence. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis present). The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). This evidence includes descriptions and observations of the claimant's limitations from the alleged impairment(s) and symptoms provided by the claimant and by family, neighbors, friends, or other persons. 20 C.F.R. § 416.945(a)(3). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

13

nonmedical evidence (e.g., daily activities, observations).'" Sieveking v. Astrue, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008).

The Plaintiff argues that the ALJ erred in assessing his RFC because he failed to provide a narrative discussion describing how the evidence supports the ALJ's conclusions. The undersigned agrees. Although the ALJ did assess the medical evidence, the ALJ jumped to the conclusion that the Plaintiff was capable of performing the full range of light work. However, the ALJ failed to include a properly supported discussion demonstrating that Plaintiff had the ability to work in an ordinary work setting on a regular and continuing basis, despite his limitations. (Tr. 13-19)

More importantly, the ALJ did not provide an explanation regarding which medical evidence supported his RFC determination. Indeed, the ALJ's determination is void of any evidence supporting the requirements of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Other than Dr. Emmons, no physician assessed Plaintiff's physical ability to walk, stand, sit, lift, carry, or perform other work-related activities during a normal workday. (Tr. 249-53) However, the ALJ specifically disregarded Dr. Emmons' opinions, erroneously stating that Dr. Emmons did not indicate how much Plaintiff could lift.[2] The ALJ has the duty to fully and fairly develop the record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). "If the ALJ did not believe

---

[2] Contrary to the ALJ's opinion disregarding Dr. Emmons' opinion, in part, because Dr. Emmons failed to indicate how much Plaintiff could lift, Dr. Emmons specifically stated that Plaintiff could occasionally lift up to 25 pounds and could occasionally carry up to 10 pounds. (Tr. 249)

. . . that the professional opinions available to him were sufficient to allow him to form an opinion, he should have further developed the record to determine, based on substantial evidence, the degree to which [Plaintiff's] . . . impairments limited [his] ability to engage in work-related activities." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (citation omitted). As stated previously, RFC is a medical question. Nothing in the medical evidence supports the ALJ's determination that Plaintiff could perform light work.

In short, this case should be remanded to the ALJ for further development of the record and explanation of Plaintiff's limitations and their relationship to his ability to perform work-related activities. Once the ALJ properly determines Plaintiff's RFC and supports that RFC with substantial medical evidence, he may want to contact a Vocational Expert ("VE") and pose a hypothetical reflecting that RFC. The undersigned is troubled by the medical evidence indicating that the Plaintiff has been diagnosed with depression and that the depression could impact his ability to perform the full range of work.[3] (Tr. 27, 149-51, 194-95) Based on the foregoing, the undersigned finds that this case should be remanded for further proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **REVERSED** and that the case be **REMANDED** for further consideration

---

[3] An ALJ may rely on the Grids to find a plaintiff not disabled where the plaintiff does not have non-exertional impairments or where the non-exertional impairment does not diminish the plaintiff's RFC to perform the full range of activities listed in the Grids. Muncy v. Apfel, 247 F.3d 728, 735 (8th Cir. 2001) (citing Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999)). "However, when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability." Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999).

consistent with this Memorandum and Order. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman<br>
UNITED STATES MAGISTRATE JUDGE

Dated this  22nd  day of March, 2010.